IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ACETRA FATAH,<br><br>  Plaintiff,<br><br>  v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, *et al.*,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 5:20-CV-272 (MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Defendants Creditors Bureau Associates ("CBA"), PDQ Services, Inc. ("PDQ"), and Collection Services of Athens, Inc. ("CSA") move to dismiss Plaintiff Acetra Fatah's claims against them. For the following reasons, those motions (Docs. 18; 19; 27) are **DENIED**.

## I. BACKGROUND

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, imposes duties upon consumer credit reporting agencies ("CRAs") and on furnishers of credit information. Two of the duties imposed on furnishers are relevant here. First, furnishers must conduct a reasonable investigation upon receiving notice of a consumer dispute about the accuracy of any information provided by the furnisher to a CRA. 15 U.S.C. § 1681s-2(b). Second, the FCRA requires that if a consumer disputes information provided by a furnisher, the furnisher "may not furnish the information to any

consumer reporting agency without notice that such information is disputed by the consumer." § 1681s-2(a)(3).

Plaintiff Acetra Fatah alleges she previously disputed tradelines in reports provided by three furnishers: Defendants Creditors Bureau Associates ("CBA"), PDQ Services, Inc. ("PDQ"), and Collection Services of Athens, Inc. ("CSA"). Doc. 1 ¶¶ 6-8. As a result, each furnisher added to Fatah's tradeline a notice that the account was in dispute.

Now, Fatah says she no longer disputes the substance of the tradelines. *Id*. ¶ 8. On March 31, 2020, she wrote Defendant Equifax a letter contending that because she no longer disputes the tradelines, the statutorily required "account in dispute" notice is inaccurate. *Id*. ¶ 9. In other words, Fatah retracted her dispute and wants the notices deleted to reflect that retraction.

Fatah alleges that Equifax forwarded the new disputes to the furnishers, who told Equifax that the reporting was accurate. *Id*. ¶¶ 10, 12. She obtained her credit report on May 19, 2020, and noted the tradelines were still listed as disputed. *Id*. ¶ 13. She claims that as a result, she "has suffered credit and emotional damages," as well as anxiety. *Id*. ¶ 14.

She brought claims against Equifax for negligent and willful false reporting, failure to maintain procedures to ensure accuracy, and failure to reasonably investigate. Doc. 1 ¶¶ 51-64. She also brought claims against furnishers CBA, PDQ, and CSA for negligent and willful failure to investigate her assertion that the tradelines were no longer disputed. *Id*. ¶¶ 15-50. CBA, PDQ, and CSA moved to dismiss. Docs. 18; 19; 27. CBA and PDQ are represented by the same counsel and filed nearly identical

briefs.  Docs. 18-1; 19-1.  CSA, though represented by different counsel, makes nearly identical arguments.  Doc. 27-1.  The three furnishers make three arguments: first, that Fatah failed to directly inform them she no longer disputed the debt; second, that they had no duty to investigate the new dispute; and third, that the complaint fails to plausibly allege causation or damages and, therefore, fails to state a claim.

Defendants CBA and PDQ also filed a motion for leave to file supplemental persuasive authority: specifically, a district court order adopting a Magistrate Judge's report and recommendation.  That motion (Doc. 38) is **GRANTED**, and the Court considers that persuasive authority, such as it is, in ruling on the motions to dismiss.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011)

(internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

Fatah alleges she noticed that certain tradelines on her credit report had an "account in dispute" notation next to them.  Doc. 1 ¶ 9.  She also alleges she "submitted a letter to Defendant Equifax requesting that the credit bureau remove the notation of 'account in dispute'" and that Equifax forwarded that letter to the Defendant furnishers.  *Id*. ¶¶ 9-10.  She claims that the request triggered the furnishers' duty to investigate credit disputes, a duty imposed by 15 U.S.C. § 1681s-2(b).  The statute provides that "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--(A) conduct an investigation with respect to the disputed information; . . .".  15 U.S.C. § 1681s-2(b).  She claims the furnishers failed to reasonably investigate her request and that she is harmed by the "account in dispute" notation.

The complaint is deficient in at least one respect: Fatah does not allege she actually disputed the accuracy of that information. Rather, she alleges she "submitted a letter to Equifax requesting that the credit bureau remove the notation of 'account in dispute.'" Doc. 1 ¶ 9. A copy of that letter is not in the record, and she does not allege the letter informed Equifax that the "account in dispute" notation was inaccurate. In other words, Fatah makes no allegation she ever "dispute[d] . . . the completeness or accuracy" of the "account in dispute" notation. 15 U.S.C. § 1681s-2(b).

As a result, it appears that she fails to state a claim. However, the Defendants did not make that argument in their motions, and Fatah has not had an opportunity to respond to it. The Court will give her that opportunity.

Three more features of the complaint are worth noting. First, Fatah does not allege the "account in dispute" notation was substantively inaccurate. To the contrary, the "account in dispute" notations were accurate as of February 4, 2020. That is because, as far as the Court can tell, the accounts *were* in dispute. She makes no allegation she attempted to retract the dispute before March 31, 2020. So as of the date of her letter, the "account in dispute" notations were not inaccurate. That may or may not matter to the substance of her failure to investigate claim in the procedural posture of a motion to dismiss, but it is certainly a notable feature of the complaint.

Second, to acknowledge the elephant in the room, Fatah's lawyers have been filing similar claims in different jurisdictions, trying to get a court to rule that when a plaintiff alleges she notified a CRA she no longer disputed her tradelines but the furnisher continued to report "account in dispute," that states a plausible claim under the FCRA for failure to investigate. As Judge Salinas of the Northern District of Georgia put

it, "Plaintiff's Complaint appears to be a form complaint substantively similar, if not identical, to multiple other complaints that Plaintiff's counsel has recently filed. . . alleging substantially identical 'facts.' . . . Plaintiff has cited no decision from any federal court that [the facts alleged state a plausible claim]." *Briscoe v. Equifax*, 1:20-cv-02239-WMR-CMS, Doc. 44 (N.D. Ga. Oct. 27, 2020), *recommendation adopted* Doc. 58.

The history of Fatah's counsel's efforts explains some of the unusual features of the complaint. In one case, Judge Salinas recommended that the court rule that when a consumer's initial dispute was communicated *directly* to the furnisher, a subsequent dispute of that dispute triggered no duty to investigate unless it too was communicated *directly* to the furnisher. *Briscoe*, Doc. 44 at 16-17 (citing *McGee v. Equifax Information Services*, LLC, 2019 WL 2714505 (N.D. Ga. Mar. 19, 2019), *recommendation adopted* 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019)). After that, counsel began omitting details about the initial dispute. *Id*. at 17. In this case, counsel does not even explicitly plead there was an initial dispute, only that "Plaintiff no longer disputes the Errant Tradelines." Doc. 1 ¶ 8. Similarly, Judge Salinas in *Briscoe* took issue with the form of the letter the plaintiff sent to Equifax; here, counsel simply omits the letter completely. Thus, to the extent the complaint is missing key context for these claims, those omissions appear largely intentional. In the past, more precision and more detail regarding these claims has resulted in dismissal—invariably so, as far as the Court can tell.

However, the Defendants fail to show that they are entitled to dismissal of Fatah's claims. Their best argument is a cursory citation to Judge Salinas's recommendation in *Briscoe*—not its reasoning, necessarily, but simply citing to it and trusting the Court to work it out. True, the recommendation in *Briscoe* seems well

reasoned, based on the pleadings in that case.  But the Defendant's briefs do not make entirely the same arguments as the recommendation they cite.  The Court, while again acknowledging the potential persuasiveness of the *Briscoe* recommendation, confines itself to the arguments made in the briefs in the present Defendants' motions to dismiss.

First, the Defendants argue that "the statute requires" that the plaintiff "directly [tell] the furnisher . . . that she no longer disputed the debt."  Docs. 18-1 at 6; 19-1 at 6; 27-1 at 8.  None explain which "statute" or provision they are talking about (presumably, something in the FCRA), nor do they cite to any provision of the statute that supports that "require[ment]."  Docs. 18-1 at 6; 19-1 at 6; 27-1 at 8.  Contrary to that purported "requirement", a furnisher's duty to investigate a dispute can be triggered by notice from a CRA.  *See Felts v. Wells Fargo Bank*, 893 F.3d 1305, 1312 (11th Cir. 2018) ("Upon receipt of a notice *from a CRA* that a consumer disputes the completeness or accuracy of any information provided by a furnisher, the furnisher must (1) conduct an investigation with respect to the disputed information . . .") (emphasis added); Doc. 1 ¶ 10 ("Furnishers received Plaintiff's consumer dispute from Equifax.").

The furnisher Defendants also argue that, absent a direct communication from Fatah, each Defendant "was required to *retain* the dispute status pursuant to § 1681s-2(a)(3) of the FCRA."  Docs. 18-1 at 6; 19-1 at 6; *see* Doc. 27-1 at 8 (emphasis in original).

However, the statute does not say that.  Section 1681s-2(a)(3) requires furnishers who receive a dispute to note that dispute on the tradeline.  Nowhere does it say that a consumer cannot retract a dispute.[1]  Granted, the position that a consumer

---

[1] In full, the subsection provides: "(a) Duty of furnishers of information to provide accurate information[—] (3) Duty to provide notice of dispute[:] If the completeness or accuracy of any information furnished by

may not retract a dispute may be *arguable*, but the statute, by itself, gives no indication that the furnisher Defendants were required to retain the notice of dispute.

The Defendants attempt to bolster this argument by citing two district court orders: *Roth v. Equifax Info. Servs., LLC*, 2017 WL 2181758 (D. Ariz. May 17, 2017) and *McGee v. Equifax Info. Servs., LLC*, 2019 WL 2714505, at *1 (N.D. Ga. Mar. 19, 2019), *report and recommendation adopted,* 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019). The court in *Roth* appears to have assumed that *if* the duty to report a dispute was triggered by a notice of dispute directly from the consumer, then the furnisher must continue performing that duty until the consumer directly communicates a withdrawal of that dispute. Whatever the merits of that assumption, it is not clearly applicable here because, as the plaintiff notes in the response brief, there is no allegation the original dispute was directly communicated to the furnishers. In *McGee*, the court noted the consumer had communicated the original dispute to the furnisher—which is not alleged here—and the court deferred to the *Roth* court's assumption that the furnisher could not withdraw the notice of dispute without a direct communication of intent to withdraw from the consumer. *McGee v. Equifax Info. Servs., LLC*, 2019 WL 2714505, at *3 (N.D. Ga. Mar. 19, 2019), *report and recommendation adopted,* 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019). Again, whatever the merits of that decision, it is not clearly[2] applicable here.

In their reply briefs, PDQ and CBA argue that "[d]espite Plaintiff's protestations, *Roth* . . . and *McGee* . . . are squarely on all fours with the instant litigation." Doc. 32 at

---

any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

[2] It is certainly arguable that despite those differences, the reasoning of those decisions still applies. However, as discussed below, the Defendants make no such argument here.

1.  Of course, that blithe assertion does not answer Fatah's arguments about potential distinctions in any way.[3]  CSA did not file a reply brief.  In short, it appears to the Court that in *Roth* and *McGee*, the fact the plaintiff directly notified the furnishers of the initial dispute is critical to the courts' reasoning.  And the Defendants make no argument to the contrary.

Second, the furnisher Defendants argue that "there was nothing for [them] to investigate."  Docs. 18-1 at 7; 19-1 at 7; 27-1 at 9.  They argue they had "no new information" to investigate.  Docs. 18-1 at 7; 19-1 at 7; 27-1 at 9.  To those two brief statements, the Defendants add a cursory citation to *Roth*.  Docs. 18-1 at 7; 19-1 at 7; 27-1 at 9.  And that is the entirety of their "no new information" argument.

That argument fails.  It is not clear that the furnishers had no new information.  Would the notice from Equifax that Fatah no longer disputed the relevant tradelines be "new information"?  If not, why not?  The briefs do not address those questions.

Similarly, the Defendants' cursory citations to *Roth* provide minimal support for their argument.  The court in that case noted that the only information regarding a dispute in the furnisher's file would have been a *direct* communication from the plaintiff that he disputed the debt.  Again, that is not the case here.[4]

---

[3] In their reply, PDQ and CBA also attach a recommendation by Judge Salinas to grant a motion to dismiss in a similar case in the Northern District of Georgia.  Docs. 32-1; 33-1.  The parties urge that the Court should "take judicial notice" of that decision and that "this recent Report and Recommendation of its sister court may be useful to this Court in rendering its opinion."  Doc. 33 at 2 n.1.  However, the Defendants did not make many of the arguments made by Judge Salinas; and the Court notes that the Report and Recommendation may have been equally useful to the Defendants in drafting their briefs.

[4] And again, to be clear, the Court is not necessarily ruling that the reasoning of *Roth* should not be extended to the facts in this case.  Only that none of the three Defendants' briefs make any argument for why such an extension would be appropriate.

Third, the Defendants argue that "[t]he FCRA is not a strict liability statute. To state a claim, a plaintiff must allege facts plausibly showing damage caused by a defendant." Docs. 18-1 at 7; 19-1 at 7; 27-1 at 10. Although "strict liability" is the wrong term for what the Defendants mean to say, the Court believes it can extrapolate an argument from that sentence.

There are two possible lines of argument there: (1) failure to allege causation and (2) failure to allege damages. The Defendants make only the causation argument. Specifically, they argue that the complaint does not plausibly allege that "if [the furnishers] had conducted a reasonable investigation of [Fatah's] second dispute to Equifax," then they "would have discovered information that [Fatah] 'no longer' disputed her debt[.]" Docs. 18-1 at 8; 19-1 at 8; 27-1 at 10.

Again, wouldn't the notice from Equifax that Fatah no longer disputed the relevant tradelines be "information"? Or, if not, why not? The briefs do not address those questions. Would a reasonable investigation have included contacting Fatah? If not, why not? Again, the briefs are silent.

## IV. CONCLUSION

To be clear, the Court is *not* ruling as a matter of law that Fatah has stated a claim under the FCRA. Accordingly, this Order should not be cited to support similar complaints in other cases. The Court rules *only* that the furnisher Defendants' motions and briefs do not establish they are entitled to dismissal of Fatah's complaint. If the Court were conducting a *sua sponte* review, independently brainstorming different lines of argument, and independently researching the issues raised by those lines of

argument, the result might be different.  But based on the briefs and arguments raised, the furnisher Defendants' motions (Docs. 18; 19; 27) are **DENIED**.

However, because Fatah does not allege she "dispute[d] . . . the completeness or accuracy" of the "account in dispute" notation, it appears she fails to state a claim.  15 U.S.C. § 1681s-2(b).  Accordingly, she is **ORDERED** to show cause, no later than March 23, 2021, why her complaint should not be dismissed for failure to state a claim.

**SO ORDERED**, this 2nd day of March, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
